# STEWART *v.* STRIDER.

CREDITORS' SUITS; FRAUDULENT CONVEYANCES; EVIDENCE.

1. A decree of the lower court which subjected a lot improved by a dwelling house, to the payment of a judgment at the suit of the judgment creditor, was *reversed*, and the bill of complaint ordered to be dismissed, where it appeared, among other things, that two years before the judgment was obtained, the property, which had been owned by the judgment debtor, was sold under a deed of trust and bought in by the holder of the indebtedness secured thereby, for $6,900; that the latter, four months later, sold the property for $6,637.50 to a sister of the debtor, who paid $637.50 on the purchase price, and gave a deed of trust on the property for the balance; that thereafter the property was improved by the expenditure thereon of about $1,500, and other deeds of trust placed upon it for $7,850, with the proceeds of which the former trust and expenses of improvement were paid; that nine years thereafter a sister of the judgment debtor sold the property to the debtor's wife, who paid $1,000 on account of the purchase price, and assumed the existing trusts, interest, and taxes, making the total purchase price $9,030.51; that the conveyances to the sister and wife of the holder were assailed by the judgment creditor upon the ground that the real consideration for the purchase by the sister was furnished by the debtor, and that, in compliance with a secret agreement between her and the debtor, the subsequent conveyance was made to the wife, whom he had married several years after the sister acquired title; that the sister and wife testified that they had received much of the money with which they made their purchases from their salaries as public school teachers and from roomers, but that their evidence, though of a character readily subject to contradiction if untrue, was not attempted to be rebutted by the complainant.

2. In a judgment creditors' suit to subject real estate in the name of a person other than the judgment debtor, to the payment of the judgment, declarations by the judgment debtor that the property belonged to him, not made in the presence of such other person, are not binding upon the latter.

No. 2353. Submitted March 4, 1912. Decided April 1, 1912.

HEARING on an appeal by one of two defendants from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, in a creditors' suit to subject certain real estate to the payment of a judgment.    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is a judgment creditor's bill filed in the supreme court of the District of Columbia by appellee, Luke C. Strider, plaintiff below, against William A. Stewart and others, seeking to subject certain real estate in the city of Washington to the payment of a judgment at law obtained by plaintiff against the defendant Stewart on the 1st day of June, 1898.

Stewart was the owner of the real estate described in the proceedings, and in 1891 gave his note to the United Security & Life Insurance Company, of Pennsylvania, for the sum of $6,000, securing the same by a deed of trust on said property. Thereafter, Stewart having made default in the payment of the note, the property was sold at public auction under the deed of trust, on the 3d day of January, 1896, and bid in by the security company for the sum of $6,900. In April, 1896, the defendant Eliza M. Thomas, a sister of Stewart, purchased the property from the security company for the sum of $6,637.50. The contract provided that $637.50 of the purchase price should be paid before the sale should be finally ratified; $400 was to be paid in cash on April 9, 1896; $118.75 to be paid in three months thereafter; and $118.75 to be paid in six months thereafter. Mrs. Thomas made the payments as agreed, consummating the sale on or about the 15th day of November, 1896, after which the security company conveyed to her the property. In consideration thereof, in addition to the cash payment of $637.50, she executed a deed of trust securing her note to the security company for the sum of $5,000, and a second trust for $1,000. Later, improvements were placed upon the property amounting to $1,500, at which time Mrs. Thomas borrowed $75 and executed a note and trust therefor. She also placed a second trust upon the property for $350. From the

proceeds of these loans she satisfied the former trusts and the expense of repairing the property.   Mrs. Thomas retained ownership in the property for over nine years, at which time she sold and conveyed it to the appellant, Harrietta G. Stewart, wife of William A. Stewart, under a contract of sale in terms very similar to the one under which she purchased from the security company.   It provided that Mrs. Stewart should pay her the sum of $1,000, and assume the trusts, interest, and taxes, making the full consideration $9,030.51.   The contract provided for the payment of $350 in cash; $325 with interest, in six months; and $325 with interest, in one year from date of the contract, at which time it was stipulated the deed should be made.   The contract was carried out, and the deeds from Mrs. Thomas to one Baltimore, a third party, and from Baltimore to Mrs. Stewart, were made on December 8, 1906.

The purchase by Mrs. Thomas and the sale to Mrs. Stewart are assailed upon the ground that the real consideration for the purchase by Mrs. Thomas was furnished by William A Stewart, and that, in compliance with a secret agreement between Mrs. Thomas and Stewart, the subsequent conveyance was made, through the medium of a third party, to Mrs. Stewart. This contention was sustained by the court below, and a decree entered accordingly, from which this appeal was taken.

*Mr. Hosea B. Moulton* and *Mr. Michael J. Colbert* for the appellant.

*Mr. James A. Burkart* and *Mr. W. Gwynn Gardiner* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

No questions of law are before us.   The facts upon which the case must turn, briefly summarized, are that Stewart like many others, went down financially in the panic of 1893.   He was at that time a single man, the property in question being occupied by himself and Mrs. Thomas as a home.   It should be

remembered that when the property was sold, Stewart had no equity in it. It only sold for sufficient to satisfy the trust against it. None of his creditors, among whom plaintiff was one, came forward to protect their interest. It is fair to assume, in the absence of anything to the contrary, that Stewart, as he testified, had exhausted his last dollar in endeavoring to save himself from the wreck. Proceedings had been instituted by the security company to eject Stewart and his sister from the premises, when the sister, Mrs. Thomas, as she testified, to save the old homestead, came forward and made the purchase.

Mrs. Thomas was a widow, her husband having died several years previous, leaving her three or four hundred dollars. After her husband's death, she conducted a dressmaking business for seven or eight years, which she testified netted her from twenty-five to thirty dollars per month. Between this period and the date of her purchase of the property, she taught sewing in the colored schools of the city, receiving at the time of giving her testimony, and for some years prior thereto, an annual salary of $1,030. She testified that out of her earnings she had saved the money with which she paid the $637.50 cash with which she purchased the property. We think it is not improbable that she had saved this comparatively small amount in all these years. Nothing is apparent on the face of the transaction to label it with fraud. She held the property over nine years, and sold her equity in it to appellant for $1,000.

Appellant married Stewart June 24, 1902, five and one-half years after the purchase by Thomas; four years after the judgment here sought to be enforced had been obtained by plaintiff, and four and one-half years before the consummation of the sale to Mrs. Stewart. The undisputed evidence is that Mrs. Stewart for twelve years prior to her marriage had been a teacher in the schools of the city, receiving an annual salary for the first two years of $500, for the next two years of $550, and for the last eight years of $1,000. She testified that she purchased the property with money she had saved from her earnings. A

large part of the money needed to pay Mrs. Thomas and discharge back interest and taxes against the property was advanced by her brother living in Chicago, to whom she had loaned money while she was teaching.

No effort was made to trace the consideration for either of these transactions to Stewart, other than by suspicion. The purchase by Mrs. Thomas is the one chiefly assailed, and yet she remained unmolested in the record ownership of the property for over nine years. It was upon her testimony that the judge below turned his decision. She was led through a tedious cross-examination covering about two hunred pages of the record, much of which related to matters wholly irrelevant to the issue, and, because of minor inconsistencies in her testimony, which she was called upon to correct in direct examination, it is insisted that she is discredited. Her bank accounts were produced, which she testified had been attended to by her brother, who had attended to all of her business affairs, not unusual when, as she testified, she was engaged in her school work during banking hours. Her deposits were reasonably accounted for. Checks were signed by her, and the business was transacted in her name. Much is made of the fact that, after a day of cross-examination, she made a mistake in giving the location of one of the banks with which she had transacted business several years before, and could not tell the exact amount of her first deposit. Titles cannot be disturbed upon such trifling inconsistencies. It also appeared that during her ownership of the property portions of the house were rented from time to time. While her brother attended largely to this business, the evidence fairly shows that the rents were paid to her. Much suspicion is attempted to be thrown around the fact that all of these transactions of Mrs. Thomas were conducted by Stewart. He had been a business man of wide experience, and we think it was natural, since her time was occupied in the schools, and he was familiar with all the transactions leading up to the purchase of the property, that she should not only have him attend to the details of the purchase, but attend to her business generally. He was her brother, single, and the only man

about the house, and the one to whom she would naturally turn for assistance. His agency was not confined to this property alone, but to all business matters with which she was connected, including another property in which she had an investment of $300.

Mrs. Stewart is assailed for not producing her brother in Chicago to corroborate her statement to the effect that she received from him a large portion of the purchase money. Her evidence upon this point is undisputed. She is defending her title. The burden is heavily upon the plaintiff. If she testified falsely, her brother was available for the plaintiff. Until her testimony on this point had been contradicted, she needed no corroboration.

It should be remembered that the material evidence upon which Mrs. Thomas and Mrs. Stewart rely to sustain the bona fides of these transactions is open to investigation. They testified to receiving their money from the proceeds of their industry as teachers in the public schools, and gave the length of service and the salaries received, all of which could be corroborated from the records of the District. They gave the names of the persons with whom they transacted business, who were available to plaintiff in rebuttal. Mrs. Thomas gave in detail the names of the roomers who had occupied the house during her ownership, and only one was produced to impeach her testimony, while a number corroborated her statements. All of this was available to plaintiff, and, since it was not produced, we must assume that the testimony is true.

But it is urged that Stewart, during the period when the title to the property was in the name of Mrs. Thomas, testified in minor suits that the property was his, and on other occasions so referred to the property. In the face of the evidence tracing the consideration to Mrs. Thomas, and the total failure to trace it to Stewart, it is difficult to understand just how these statements, made by him out of her presence, and in connection with transactions which did not concern her, could be given effective consideration in an action to defeat her title.

The decree is reversed, with costs, and the cause is remanded with instructions to dismiss the bill. *Reversed.*